1   **WO**

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                        FOR THE DISTRICT OF ARIZONA

8

9   Abel Ruiz Diaz, et al.,              )    No. CV 03-2127-PHX-MHM
                                          )
10              Plaintiffs,               )    **ORDER**
                                          )
11   vs.                                  )
                                          )
12                                        )
     Eagle Produce Limited Partnership, et al.,)
13                                        )
                Defendants.               )
14                                        )
                                          )
15   _____    )

16          This is an employment termination case in which Plaintiffs have asserted claims based

17   on age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"),

18   29 U.S.C. § 623(a)(1), and in violation of the Agricultural Worker Protection Act ("AWPA"),

19   29 U.S.C. §§ 1801 et seq., based on Defendants' alleged violation of the ADEA.[1] Defendants

20   Eagle Produce Limited Partnership ("Eagle Produce"), Phoenix Agro Invest, Inc. ("Phoenix

21   Agro"), and SAM Management, Inc. ("SAM"), have filed a motion for summary judgment

22   as to all claims asserted by Plaintiffs.  (Doc.  71).  Plaintiffs have filed a response in

23   opposition on summary judgment (Doc.  85) and Defendants have filed a reply.  (Doc. 89).

24   _____

25          [1]Plaintiffs specifically contend in their fourth amended complaint as to their AWPA
     claim that Defendants violated 29 U.S.C. § 1832(c). (see fourth amended complaint at para.
26   74).  Section 1832(c) provides that "[n]o farm labor contractor, agricultural employer, or
27   agricultural association shall, without justification, violate the terms of any working
     arrangement made by that contractor, employer, or association with any seasonal agricultural
28   worker."

1  The parties have supported their summary judgment papers with a separate statement of facts.

2  (Doc. 72; 85-Exhibit; 86 & 90).  Defendants also have filed a motion to strike certain of

3  Plaintiffs' factual statements and evidence submitted in support of their response in

4  opposition on summary judgment. (Doc. 91).  Plaintiffs have filed a response  in opposition

5  to the motion to strike (Doc. 92) and Defendants have filed a reply.  (Doc. 93).

6       The Court heard oral argument on Defendants' motion for summary judgment on

7  February 8, 2006.  The Court enters this Order on these summary judgment proceedings.

8                                    I.

9                          Standard of Review.

10      A motion for summary judgment may be granted only if the evidence shows "that

11 there is no genuine issue as to any material fact and that the moving party is entitled to

12 judgment as a matter of law."  Fed.R.Civ.P. 56(c). "Material facts are those which might

13 affect the outcome of the suit. ... An issue is genuine if a reasonable trier of fact could find

14 in favor of the nonmoving party." Rivera v. Philip Morris, Inc., 395 F.3d 1142, 1146 (9th Cir.

15 2005).   To defeat the motion, the non-moving party must show that there are genuine factual

16 issues "that properly can be resolved only by a finder of fact because they may reasonably

17 be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250,

18 106 S.Ct. 2505, 2511 (1986).  The party opposing summary judgment "may not rest upon the

19 mere allegations or denials of [the party's] pleadings, but ... must set forth specific facts

20 showing that there is a genuine issue for trial." Rule 56(e).  See also, Matsushita Elec. Indus.

21 Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 106 S.Ct. 1348, 1356 (1986).

22                                   II.

23                    Defendants' Motion to Strike.

24      The Court first considers Defendants' motion to strike various portions of Plaintiffs'

25 statement of facts in opposition to summary judgment (Doc. 91).  Under Fed.R.Civ.P. 56(e),

26 "the adverse party's response, by affidavit or as otherwise provided in [Rule 56], must set

27 forth specific facts showing that there is a genuine issue for trial."  Defendants contend that

28 Rule 56(e) requires Plaintiffs to set forth specific facts that will be admissible at trial by

1    affidavit, declarations, or admissions on file to establish that there is a genuine issue for trial.

2    However, Plaintiffs respond that, "[t]o survive summary judgment, a party does not

3    necessarily have to produce evidence in a form that would be admissible at trial, as long as

4    the party satisfies the requirement of Federal Rule of Civil Procedure 56", citing <u>Block v.</u>

5    <u>City of Los Angeles</u>, 253 F.3d 410, 418-19 (9th Cir. 2001).  The Ninth Circuit has held that

6    generally, information submitted at the summary judgment stage may be considered if its

7    contents would be admissible at trial.  <u>See</u> <u>Fraser v. Goodale</u>, 342 F.3d 1032, 1036 (9th Cir.

8    2003)(the district court properly considered the contents of plaintiff's diary on summary

9    judgment; "[a]t the summary judgment stage, we do not focus on the admissibility of the

10   evidence's form").

11        Defendants have moved to strike Plaintiffs' paragraph 1 because the facts recited

12   therein are based on allegations set forth in the amended complaint.  Defendants' motion to

13   strike is granted as to paragraph 1. The "nonmoving party cannot rely upon conclusory

14   allegations in its pleadings or memoranda and briefs to establish a genuine issue of material

15   fact." <u>Pastore v. Bell Telephone Co. of Pennsylvania</u>, 24 F.3d 508, 511-12 (3d Cir. 1994).

16   Plaintiffs in their response refer the Court to the briefing set forth in Plaintiffs' motion for

17   partial summary judgement in support of paragraph 1; however, Plaintiffs have filed a

18   stipulation withdrawing their motion for partial summary judgment.  (Doc. 97).

19        Defendants have moved to strike paragraphs 3-6, 10-13, 27, 36 and 40 on the grounds

20   that the facts set forth misstate or mischaracterize testimony, assume facts not in evidence,

21   or are unsupported by admissible evidence.

22        Defendants' motion to strike is granted in part and denied in part as to paragraph 3.

23   The Court has considered the deposition testimony of Defendants' employee Owen Brandt

24   that the farm operations occurred in repetitive fashion each year, including 2002.  Plaintiff

25   Mancilla testified that "there's always work" for tractor drivers.

26        Defendants' motion to strike is granted in part and denied in part as to paragraph 4.

27   The Court has considered the deposition testimony of Defendants' officials John Redmond

28   and Steven Martori regarding who owned the land where Plaintiffs worked.

1    Defendants' motion to strike is granted in part and denied in part as to paragraph 5.

2    The Court has considered the deposition testimony of Defendants' employee Jimmy Byrd

3    regarding the tractor work of Crew 94 drivers between April and November as including,

4    "planting," "cultivating," and "heavy tillage".

5    Defendants' motion to strike is granted in part and denied in part as to paragraph 6.

6    The Court has considered the deposition testimony of Plaintiff Renteria that when the work

7    "goes down a little, they'll have you fixing equipment."

8    Defendants' motion to strike is granted in part and denied in part as to paragraph 10.

9    The Court has considered the deposition testimony of Defendants' former employee Chester

10   Daffern that his employment was terminated because he is "old."  The Court has considered

11   Mr. Daffern's testimony as based on his own opinion only. The Court observes, however, that

12   speculative testimony in affidavits and moving papers is insufficient to raise genuine issues

13   of fact and defeat summary judgment.  Thornhill Pub. Co. Inc. v. Gen. Tel. & Electronics

14   Corp., 594 F.2d 730, 738 (9th Cir. 1979).

15   Defendants' motion to strike is denied as to paragraph 11.  The Court has considered

16   the deposition testimony of Defendants' employees Jimmy Byrd and Owen Brandt as to their

17   responsibilities and duties in 2002 for Eagle Produce.

18   Defendants' motion to strike is granted in part and denied in part as to paragraph 12.

19   The Court has considered the opinion of Defendants' former employee Mr. Daffern that no

20   workers on Crew 94 were laid off while he was the supervisor between 1997 and his

21   employment termination in late 2001. The Court also has considered the deposition testimony

22   of Defendants' employee Mr. Gilberto Vigueria, a crew leader of Crew 94,  to the extent that

23   he expressed his opinion that he did not recall any time from 1994 to the date of his

24   deposition when there was not enough work for tractor drivers on Crew 94.

25   Defendants' motion to strike is granted in part and denied in part as to paragraph 13.

26   The Court has considered Mr. Daffern's deposition testimony that in his opinion there were

27   tractor positions available in harvest during the time of his employment with Defendants until

28   his termination in late 2001.

1   Defendants' motion to strike is denied as to paragraph 27. The Court has considered

2   the deposition testimony of Defendants' official Mr. Redmond that he did not recall anything

3   significant about 2002 that was different from any other year.

4   Defendants' motion to strike is granted in part and denied in part as to paragraph 36.

5   The Court has considered the actual text of the May 14, 2002 letter from Defendants' official

6   Mr. Redmond to the EEOC. The Court has considered the letter to the extent that Mr.

7   Redmond could testify to all relevant portions of the letter based on personal knowledge or

8   documents kept in the regular course of business, and to the extent that the letter could be

9   presented in an admissible form at trial, such as to refresh recollection.  See Olitsky v.

10  Spencer Gifts, Inc., 964 F.2d 1471, 1476-77 (5th Cir. 1992)(letter written by defendant's

11  attorney responding to notice from EEOC of plaintiff's discrimination claim held admissible;

12  letter denied that the employer had discriminated and asserted facts in support of the

13  employer's position; letter also contained no information relating to settlement).

14  Defendants' motion to strike is granted in part and denied in part as to paragraph 40.

15  The Court has considered the opinion testimony of Defendants' former employee Mr. Daffern

16  who expressed his opinion that he did not recall any disciplinary problems involving Plaintiff

17  Moreno during the time Mr. Daffern was the supervisor of Crew 94.

18  Defendants' have moved to strike paragraph 43 as setting forth facts based on the

19  notes of an EEOC investigator during a telephone conversation with Defendants' former

20  employee and financial officer, Mr. Redmond. (Plaintiffs' statement of facts, Exhibit P).

21  Defendants' motion to strike paragraph 43 is granted. The notes are inadmissible hearsay.

22  See Fed.R.Evid. 801(c) (defining hearsay); Fed.R.Evid.802 (excluding hearsay except as

23  provided by rules); Fed.R.Evid. 602 (limiting witness's testimony to those matters of which

24  the witness has personal knowledge).  See Stolarczyk v. Senator International Freight

25  Forwarding, LLC, 376 F. Supp. 2d 834, 839-40 (N.D. Ill. 2005)(EEOC investigator's notes

26  of interview with plaintiff/claimant held to be inadmissible hearsay on summary judgment

27  proceedings). The notes cannot be considered an admission by Mr. Redmond who has not

28  adopted the notes as his own statement. Moreover, the author of the EEOC investigator's

1    notes, purportedly "J.M. Aguirre", has not sworn that the notes are accurate and true.

2    "[D]ocuments which have not had a proper foundation laid to authenticate them cannot

3    support a motion for summary judgment." <u>Cristobal v. Siegel</u>, 26 F.3d 1488, 1494 (9th Cir.

4    1994).

5         Defendants' motion to strike is denied as to paragraph 58.  The Court has considered

6    Plaintiff Renteria's statement in his sworn affidavit that he was not the only Eagle Produce

7    employee who cashed checks on company property but to his knowledge he was the only

8    employee disciplined for doing so.  The Court has considered Mr. Renteria's opinion to the

9    extent it is based on his own personal knowledge.  As noted above, however, speculative

10   testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and

11   defeat summary judgment.  <u>Thornhill Pub. Co. Inc.</u>, 594 F.2d at 738.

12        Defendants' have moved to strike the facts set forth in paragraph 59 as based on the

13   "sham" affidavit of Plaintiff Renteria.  Defendants point out that Plaintiff Renteria testified

14   during deposition that Defendants' employee Gilberto Vigueria, a crew leader on Crew 94,

15   told Renteria he was going to fire all the workers that he did not like.  Mr. Renteria further

16   testified that Mr. Vigueria did not say he was going to get rid of the people who are older.

17   In his subsequent sworn affidavit, however, Mr. Renteria states that Mr. Vigueria told him

18   he intended to fire the older workers because he did not like them.  Mr. Renteria has stated

19   in his affidavit that he became confused during his deposition testimony on this issue and that

20   his purpose in submitting the affidavit is to clarify the meaning of his deposition testimony.

21   The Court has considered the sworn statements contained in Plaintiff Renteria's affidavit.

22   Defendants' motion to strike paragraph 59 is denied.

23        Defendants' motion to strike is denied as to paragraph 67.  The Court has considered

24   the testimony of Mr. Owen Brandt, the supervisor of Crew 94 in early 2002, that some of the

25   replacement workers possibly performed some of the work that Plaintiffs had performed and

26   that the work performed by Crew 94 is "repetitive."  Mr. Brandt was the supervisor of Crew

27   94 and his testimony appears to be based on his own personal knowledge.

28

1    Defendants have moved to strike paragraphs 38, 44, 54-55 and 65 as inaccurate and

2    inadmissible hearsay, stating that the factual statements in these paragraphs are based on

3    Exhibit N which has been submitted in support of Plaintiffs' statement of facts.  Exhibit N

4    is a chart that shows a listing of certain of Defendants' employees on Crew 94 along with

5    their dates of birth, dates of hire and dates of "last check."  This chart was prepared by

6    Defendants' former Financial Officer John Redmond during the discovery period and

7    provided to Plaintiffs' counsel.  Mr. Redmond testified during his deposition that he prepared

8    Exhibit N by pulling information from company "payroll records" and that he "hoped" it was

9    accurate.  Defendants object that it is unknown what "payroll records" Mr. Redmond

10   examined to create the summary that is now offered by Plaintiffs as Exhibit N. Defendants

11   have submitted a supplement to their statement of facts to correct information contained in

12   Plaintiffs' Exhibit N.

13   Under Fed.R.Evid. 901(a), "[t]he requirement of authentication or identification as a

14   condition precedent to admissibility is satisfied by evidence sufficient to support a finding

15   that the matter in question is what the proponent claims." Defendants' former employee Mr.

16   Redmond prepared the employees chart based on company payroll records, indicating that

17   he hoped it was accurate.  Defendants do not dispute that they produced the chart during

18   discovery.  This is sufficient basis for the Court to consider the employees chart on summary

19   judgment.  See McConathy v. Dr. Pepper/Seven Up Corp., 131 F.3d 558, 562 (5th Cir.

20   1998)(district court on summary judgment did not abuse its discretion in considering

21   plaintiff's social security application where plaintiff produced application during discovery,

22   it bore her signature, and plaintiff did not claim that the document was not authentic or a

23   forgery; and where defendant did not provide affidavit of counsel that the document was

24   actually produced by plaintiff).  Defendants' motion to strike paragraphs 38, 44, 54-55 and

25   65 is denied.

26                                         III.

27                              Background Facts.

28

1        Plaintiffs Abel Ruiz Diaz, Ubaldo Moreno, Piedad H. Renteria and Alejandro D.

2    Mancilla are former employees of Eagle Produce. Defendant Eagle Produce owns and

3    operates farming operations in Arizona.  Prior to July 2002, Eagle Produce employed all

4    employees, including managers. In July 2002, Phoenix Agro became the employer for

5    management level positions.  Farming operations are cyclical in that the land is prepared for

6    planting, crops are planted and harvested, and the crop is then destroyed allowing the cycle

7    to repeat. According to Defendants, farming leads to fluctuating work and seasonal layoffs.

8    In 2002, the number of employees employed by Eagle Produce fluctuated from a low of 332

9    in February to a high of 770 employees in July.

10       Eagle Produce employed the four Plaintiffs in the Aguila farming tractor department

11   which is designated crew number 94, Eagle Produce's only farming tractor crew.  Crew 94's

12   only responsibilities are to prepare the land for harvesting with no direct role in the actual

13   harvesting of the crop.  Once all the crop is harvested, Crew 94 prepares the land for the next

14   year.  Crew 94's activities include but are not limited to leveling, airing out the ground (called

15   ripping), discing, cultivating, sprinkling, bedding and mulching.  Planting is the most

16   important job on the farm and is performed by specialized tractor operators.

17       According to Defendants, Eagle Produce utilizes two types of planting styles for its

18   melon crops: open and plastic mulch. Open planting requires Crew 94 to perform the greatest

19   number of hours to complete.  Significantly less hours are required to prepare fields using

20   plastic mulch.  Second year plastic mulch increases efficiency because fields using second

21   year plastic mulch require minimal work to prepare that field for planting.  The effect of the

22   increased use of plastic mulch is that Crew 94 could perform the same amount of work with

23   less man-hours expended.  According to Defendants' statistical evidence, all employees in

24   Crew 94 combined to work 7,346 hours total for January and February 2002, compared to

25   13,710 hours for the same period in 2001.  Eagle Produce also decreased the total land

26   farmed from 7,966.48 acres in 2001 to 6,961.75 acres in 2002.

27       In May 2001, Owen Brandt began working for Eagle Produce as a co-supervisor of

28   Crew 94.  The other co-supervisor was Chet Daffern.  In mid-December 2001, Mr. Daffern

was fired and Mr. Brandt became Crew 94's supervisor responsible for the hiring and firing decisions of the workers on Crew 94. As a result of the decrease in operations in January and February 2002, Mr. Brandt had to lay off tractor drivers. Plaintiffs at the time were employed as tractor drivers for Eagle Produce.

Plaintiffs have cited the testimony of Mr. Brandt that Crew 94 tractor operators worked year-round in 2002. Plaintiff Mr. Renteria has stated in an affidavit that he and three other tractor drivers in Crew 94 regularly planted crops and that there was no special training for employees to learn how to plant crops. Mr. Daffern testified that while he was supervisor of Crew 94, he did not transfer anyone except to the harvest operations and he never laid off workers. When asked during his deposition why he had been fired, Mr. Daffern answered "because [he] is old." Mr. Daffern went on to testify that this must have been the reason because he performed his job and because Jimmy Byrd, one of Defendants' supervisors, had said to him, "what will I do when you retire."

Defendants' policy for laying off workers is contained in the Eagle Produce LP Company Handbook. The policy provides that various factors including length of employment must be considered in making the decision regarding whom to lay off.

Mr. Brandt's supervisor, Jimmy Byrd, testified during his deposition that although Mr. Brandt would have been the person to actually order the lay offs, any lay off would have occurred as a result of Byrd's orders. Mr. Byrd, however, did not recall specifically telling Mr. Brandt to lay off any workers in 2002. Mr. Brandt testified during his deposition that he laid off workers in 2002 without speaking to Mr. Byrd or anyone else in Defendants' management. Mr. Brandt testified that he laid off workers in 2002 because he had heard that broccoli would not be planted in 2002. Mr. Brandt did not look at any employee files or consider length of employment in determining which workers to lay off. He also could not recall if the company had a policy relevant to laying off workers. Mr. Brandt also testified that some of the new workers were possibly hired to perform work that Plaintiffs had done.

1. Plaintiff Abel Ruiz Diaz.

1    Mr. Diaz performed basic land preparation work and drove the water truck.
2    According to Defendants, he was not qualified for planting seeds.  The water truck is utilized
3    to spray water on the roads and other dirt areas to minimize dust levels.  During the harvest
4    season, water trucks operate 24 hours a day.  There is little need for water trucks in the
5    winter.

6    When Mr. Diaz returned from vacation on January 19, 2002, Mr. Brandt informed him
7    that he had no work that needed to be performed.  Mr. Brandt told Mr. Diaz that he could
8    transfer to the harvest crew to drive a tractor.  Mr. Diaz responded that he had a heart
9    condition which prohibited his transfer to the harvest crew, and that his doctor had told him
10   he was not to lift anything over 50 pounds. A harvest driver's job entails driving a tractor that
11   is pulling a trailer with a bin  holding fruit as other individuals load fruit into the bin.  Joe
12   Acero, the supervisor for all harvest crews, testified during deposition that a harvest driver's
13   job is easier and less strenuous than the work performed by Crew 94.  When Mr. Diaz
14   declined the transfer, Mr. Brandt decided Diaz should be laid off.  Mr. Diaz was 55 years of
15   age at the time and had twelve years of experience as a tractor driver.

16   Plaintiff Diaz testified during his deposition that the transfer to the harvest crew would
17   have resulted in a reduction in his hourly rate from $6.25 to $5.15.  Mr. Diaz received a
18   notice of termination stating his employment was being terminated because of a reduction
19   in force.  Mr. Diaz's last day of employment was January 19, 2002.

20   In a letter dated May 14, 2002 to the EEOC, John Redmond, Defendants' then Chief
21   Financial Officer, stated that Mr. Diaz had been laid off because he had a pacemaker, he was
22   unable to do the job required of him, he refused a transfer to a more suitable job, and because
23   of a work slowdown.  In their answers to interrogatories, Defendants stated that Mr. Diaz had
24   been discharged because of a seasonal work slow down and he had refused a transfer when
25   offered to him.

26   Plaintiffs contend that relevant to Plaintiff Diaz, between January and May 2002,
27   Defendants hired nine new employees to work on Crew 94 and that of these employees the
28

1   following ranged in age from 21 to 39 years old: William Monroe, Juan Cazares, Anton

2   Bucklew, Clint White, Javier Gastelum, Arturo Osuma, and Jesus Valdez.

3        2.  <u>Plaintiff Alejandro D. Mancilla</u>.

4        Prior to Mr. Brandt's employment with Eagle Produce, Mr. Mancilla's full-time

5   position at Eagle Produce was driving a tractor up and down Eagle Produce's roads at four

6   to five miles per hour to help John Deere test global positioning system technology.  When

7   the John Deere test tractor work ended, Mr. Brandt hired Mr. Mancilla as a water truck

8   driver.  Mr. Mancilla did not perform tractor work for Crew 94 while Brandt was supervisor

9   Defendants state that Mr. Mancilla was not qualified for planting.

10       On February 5, 2002, Mr. Mancilla received a notice of termination stating in Spanish

11  that his employment was being terminated due to a reduction in work.  Mr. Mancilla was 65

12  years of age at the time of his discharge and had worked for Defendants for more than five

13  years.

14       In his May 14, 2002 letter to the EEOC, Mr. Redmond stated that Mr. Mancilla was

15  laid off due to a work slow down.  Mr. Redmond further stated that Mr. Mancilla's work

16  history had been taken into account and that he had previously been given warnings for

17  breaking the bottom of a chemical trailer and for not wearing safety equipment.  In their

18  answers to interrogatories, Defendants stated that Mr. Mancilla had been discharged because

19  of a seasonal work slow down, a reduction in work, and that he had been hired as an

20  experimental tractor driver for one limited project.  Defendants further stated that when the

21  project had been completed, Mr. Brandt, the Crew 94 supervisor, had allowed Mr. Mancilla

22  to continue his employment driving the water truck and that the reduction in work had

23  resulted in the reduction of the use of the water truck.  Mr. Brandt testified during deposition

24  that he terminated Mr. Mancilla's employment because he had destroyed company property.

25       As relevant to Mr. Mancilla, Plaintiffs contend that Defendants hired eight workers

26  to Crew 94 -- William Monroe, Jose Garcia, Ramiro Salgado, Juan Cazares, Anton Bucklew,

27  Clint White, Javier Gastelum and Jesus Valdez --  all of whom were younger than Mr.

28

1  Mancilla. Jose Garcia was six years younger than Mr. Mancilla and the other workers ranged
2  in age between 21 and 39 years old.

3      3. Plaintiff Ubaldo Moreno.

4      Mr. Moreno was employed as a general tractor driver for Eagle Produce.  Defendants
5  state that he was not qualified for planting operations.  While working the night shift on
6  February 5, 2002, Mr. Moreno allegedly caused $10,000.00 in damage to the tractor.  On
7  February 6, 2002, Mr. Brandt laid off Mr. Moreno for destruction of company property.  Mr.
8  Moreno at the time was 66 years of age.

9      Mr. Redmond in his May 14, 2002 letter to the EEOC stated that Plaintiff Mr. Moreno
10 was laid off due to a work slow down and that his work history was taken into account.  Mr.
11 Redmond further stated that Mr. Moreno had been disciplined previously for damaging an
12 irrigation ditch and a disc and tractor and for bringing a passenger on farm equipment.  The
13 decision had been made to let him go. As relevant to Mr. Moreno, Plaintiffs contend that,
14 between January and May 2002, Defendants hired nine new employees to work on Crew 94
15 and that of these new employees the following ranged in age from 21 to 39 years old:
16 William Monroe, Juan Cazares, Anton Bucklew, Clint White, Javier Gastelum, Arturo
17 Osuma, and Jesus Valdez.

18      4. Plaintiff Piedad H. Renteria.

19      On February 23, 2002, Eagle Produce discharged Mr. Renteria for solicitation on
20 company property.  Mr. Renteria allegedly operated a check cashing business out of his
21 vehicle.  When Mr. Brandt became aware of this alleged business, he verbally warned Mr.
22 Renteria to cease his check cashing business.  Mr. Brandt, who speaks only a little Spanish,
23 gave Mr. Renteria the oral warning with Beatriz Lizarraga acting as translator.  Defendants
24 state that Mr. Renteria understands a little English and understood the warning and
25 acknowledged receiving it.  Mr. Brandt warned Mr. Renteria to cease the business operation
26 immediately.  Defendants claim that in direct violation of the warning and company policy,
27 Mr. Renteria resumed his check cashing business on Eagle Produce's property.  The day after
28 Mr. Renteria resumed his business, Mr. Brandt terminated Renteria's employment for cashing

1    checks on company property. Mr. Renteria stated in his answers to interrogatories and in an
2    affidavit that Gilberto Vigueria, a crewleader on Crew 94, told him in a private conversation
3    that he was going to fire older workers because he did not like them.

4        At the time of his employment termination, Mr. Renteria had 15 years of experience
5    working for Defendants as a tractor driver.  Mr. Renteria allegedly had engaged in his check
6    cashing business in front of the farm office for several years without being reprimanded.  Mr.
7    Renteria claims that he was not the only one of Defendants' employees who cashed checks
8    on company property but that he was the only one disciplined for doing so.  Mr. Renteria has
9    stated in an affidavit that he was qualified to plant and not only had operated planting tractors
10   but had instructed other Crew 94 tractor drivers on how to plant.

11       On his last day of employment, Plaintiff Renteria received a notice of termination
12   stating in Spanish that his employment was being terminated for violating "Group Rule II,
13   #6: Soliciting money or selling any merchandise without the permission of the company."
14   In his May 14, 2002 letter to the EEOC, Mr. Redmond stated that Mr. Renteria had been
15   discharged for cause, that he had violated company rules against operating a check cashing
16   business on Defendants' property.  In their answers to interrogatories, Defendants stated that
17   Mr. Renteria's employment had been terminated due to a seasonal work slowdown and a
18   reduction in work, and because of his violation of company rules.

19       Plaintiffs contend that following Mr. Renteria's employment termination, Defendants
20   hired five individuals who ranged in age from 21 to 39 years old.  These individuals were
21   Ramiro Salgado, Juan Cazares, Anton Bucklew, Javier Gastelum and Jesus Valdez.
22   According to Gilberto Vigueria, these individuals had very little experience driving tractors.

23       Defendants state that on February 7, 2002, Eagle Produce hired William Monroe as
24   a grader operator to replace Fermin Palma who had had a heart attack and was not medically
25   able to return to work.  Mr. Monroe's employment ended on April 2, 2002.  Anton Bucklew
26   was hired shortly after Monroe's termination to operate the grader.

27

28

1    Clint White was originally hired by Eagle Produce on June 11, 1999.  Mr. White was

2  fired on March 12, 2002.  Arturo Osuma was originally hired on January 2, 2001.  Eagle

3  Produce hired Jose Garcia, aged 58, on February 18, 2002.

4    Justiniano Vasquez's employment with Eagle Produce ended on March 12, 2002.  Jose

5  Andujo's employment ended on March 12, 2002.

6                                                        IV.

7                                                  Discussion.

8    The ADEA makes it "unlawful for an employer . . . to discharge any individual . . .

9  because of such individual's age." 29 U.S.C. § 623(a)(1).  Plaintiffs' AWPA claims are based

10  on Defendants' alleged violation of the  ADEA and therefore the Court's determination on

11  the ADEA claims applies as well to Plaintiffs' claims under the AWPA.

12    Regarding an ADEA claim the plaintiff must establish a prima facie case of

13  discrimination either through evidence showing the employer intended to discriminate or

14  through a presumption arising from proof of the McDonnell factors. Villodas v. HealthSouth

15  Corp., 338 F. Supp. 2d 1096, 1101 (D. Ariz. 2004) (citing McDonnell Douglas Corp. v.

16  Green, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824 (1973) and Wallis v. J.R. Simplot Co., 26

17  F.3d 885, 889 (9th Cir. 1994)). Plaintiff must show that (1) he was over 40 years of age; (2)

18  he was satisfactorily performing his employment responsibilities;  (3) he was discharged

19  from his employment; and (4) he was replaced by a substantially younger employee with

20  equal or inferior qualifications.  Coleman v. Quaker Oats Co., 232 F.3d 1271, 1281 (9th Cir.

21  2000); Mundy v. Household Finance Corp., 885 F.2d 542, 545 (9th 1989).

22    The plaintiff in an employment discrimination case "need produce very little evidence

23  in order to overcome an employer's motion for summary judgment." Chuang v. Univ. of Cal.

24  Davis, Bd. of Trustees, 225 F.3d 1115, 1124 (9th Cir. 2000). The plaintiff need only offer

25  evidence that "gives rise to an inference of unlawful discrimination." Wallis v. J.R. Simplot

26  Co., 26 F.3d 885, 889 (9th Cir. 1994) (quoting Lowe v. City of Monrovia, 775 F.2d 998,1005

27  (9th Cir. 1985)).

28

1   The standard summary judgment principles apply, and a shifting burden analysis is

2   used. Rose v. Wells Fargo & Co., 902 F.2d 1417, 1420 (9th Cir. 1990). Throughout, the

3   plaintiff retains the burden of persuasion. Texas Dep't of Community Affairs v. Burdine, 450

4   U.S. 248, 253, 101 S.Ct. 1089, 1093 (1981). When a plaintiff alleges disparate treatment,

5   "liability depends on whether the protected trait (under the ADEA, age) actually motivated

6   the employer's decision." Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 141,

7   120 S.Ct. 2097, 2105 (2000) (quoting Hazen Paper Co. v. Biggins, 507 U.S. 604, 610, 113

8   S.Ct. 1701 (1993)). If the plaintiff succeeds in making a prima facie showing of illegal

9   discrimination, then the defendant must articulate some legitimate, nondiscriminatory reason

10   for the employee's rejection.   Reeves, 530 U.S. at 141, 120 S.Ct. at 2105 (quoting

11   McDonnell, 411 U.S. at 802, 93 S.Ct. at 1824). The burden is one of production, not

12   persuasion, and does not involve a credibility assessment. Reeves, at 142, 120 S.Ct. at 2106

13   (citing St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 509, 113 S.Ct. 2742, 2749 (1993)).

14   The burden then shifts back to the plaintiff to prove that the legitimate reason

15   proffered by the  defendant is a pretext for discrimination. Reeves, at 143, 120 S.Ct. at 2106.

16   A plaintiff may show that the defendant's reason is a pretext either directly by showing that

17   a discriminatory reason more likely motivated the employer or indirectly by showing that the

18   employer's proffered explanation is unworthy of credence. Villiarimo v. Aloha Island Air,

19   Inc., 281 F.3d 1054, 1062 (9th Cir. 2002) (citing Chuang, 225 F.3d at 1123). The plaintiff

20   may rely on circumstantial evidence to show pretext, but it must be both specific and

21   substantial. Villiarimo, at 1062 (citing Godwin v. Hunt Wesson, Inc., 150 F.3d 1217, 1222

22   (9th Cir. 1998)).

23   Defendants contend in their summary judgment motion that none of the Plaintiffs can

24   establish a prima facie case of age discrimination.  Defendants specifically argue that there

25   is no evidence that Eagle Produce hired substantially younger workers in early 2002 to

26   replace Plaintiffs or that any worker hired had equal or inferior qualifications.  Defendants

27   further contend that Mr. Brandt was the decision-maker in making the lay off decisions and

28   he had no knowledge of the Plaintiffs' respective ages at the time of the lay offs. Defendants

1   additionally contend that Plaintiff Moreno was not satisfactorily performing his job at the

2   time of the employment termination.  Defendants argue that even if Plaintiffs can show a

3   prima facie case, Eagle Produce has articulated a legitimate, non-discriminatory cause for the

4   employment action.  Specifically, Mr. Renteria was discharged for operating a check cashing

5   business on Defendants' property in violation of company policy.  Mr. Moreno was chosen

6   for layoff after he caused significant damage to a tractor.  Less work was available for Crew

7   94 in early 2002 due to the utilization of plastic mulch.

8        Plaintiffs contend that they have established a prima facie case of age discrimination

9   based in large part on the chart attached as Exhibit N to their statement of facts on summary

10  judgment.  This chart, which was prepared by Defendants' former financial officer Mr.

11  Redmond and provided to Plaintiffs during discovery, contains a list by name and date of

12  birth of all Plaintiffs and the workers allegedly hired to replace them on Crew 94.  Plaintiffs

13  further cite to the testimony of Gilberto Vigueria, Mr. Brandt's assistant, who stated that

14  several of the replacement workers had very little experience driving tractors.  Plaintiffs

15  attempt to distinguish one alleged replacement worker, Mr. Jesus Garcia, who was 58 years

16  of age at the time he was hired on February 18, 2002, noting that while he was older than

17  Plaintiff Diaz, he was younger than the other three Plaintiffs.  Plaintiff  Moreno further

18  contends that he was satisfactorily performing his job at the time of his discharge.  Plaintiff

19  Renteria contends that he was qualified to perform planting duties at the time of his

20  termination.

21       Plaintiffs argue that, at the summary judgment stage, they are not required to establish

22  conclusively that the employer knew that the replacement workers were substantially

23  younger than the Plaintiffs.  Plaintiffs contend that genuine issues of material fact exist as to

24  whether Defendants' terminated Plaintiffs' employment based on legitimate, non-

25  discriminatory reasons.  Plaintiffs point to Mr. Vigueria's alleged statement to Plaintiff

26  Renteria that he was going to fire older workers because he did not like them and Mr.

27  Daffern's deposition testimony that he was fired because he is "old."  Plaintiffs also contend

28  that Defendants have provided multiple inconsistent reasons for the employment actions,

1  including seasonal slow down, the use of plastic mulch, the decision not to plant broccoli,

2  and that Mr. Brandt deviated from company policy in making the "lay off" decisions.

3          In this case, the Court concludes that Plaintiffs have established two of the elements

4  of a prima facie case. Plaintiffs were over the age of 40 and they suffered an adverse

5  employment action in the termination of their employment.  The Court also has assumed that

6  Plaintiffs were performing their jobs in a satisfactory manner for purposes of establishing a

7  prima facie case. However, Plaintiffs have not shown that they were replaced by substantially

8  younger employees with equal or inferior qualifications.

9          In Ritter v. Hughes Aircraft Co., 58 F.3d 454 (9th Cir. 1995), the district court granted

10 the defendant's motion for summary judgment where plaintiff Ritter had claimed that his

11 employment was terminated on account of his age.  Ritter, who was 51 years old at the time,

12 alleged in his complaint that after his discharge, work originally performed by him was taken

13 by another Hughes employee, one Ernie Lau, who was substantially younger. In his

14 opposition to summary judgment, Ritter argued not that Lau took his position but that Lau

15 had hired some other unnamed person outside the protected age group.  The Ninth Circuit

16 initially held that Ritter had failed to present sufficient evidence on the issue, stating as

17 follows:

18              ... Ritter presented no specific evidence establishing the identity,
             age, or inferior qualifications of this employee.  In view of the
19           inconsistency of Ritter's claims and the vagueness of the
             evidence offered in support of them, we conclude, as did the
20           district court, that Ritter failed to present sufficient evidence to
             raise any genuine issue of fact as to whether he had been
21           replaced by a person outside the protected class. (citation
             omitted).
22
23 Id., at 457.  The Ninth Circuit went on to find, however, that Ritter could also prove age

24 discrimination "'through circumstantial, statistical or direct evidence that the discharge

   occurred under circumstances giving rise to an inference of age discrimination.'" Id. (quoted
25
   citation omitted).  After noting Ritter's evidence that a number of projects and positions had
26
   been subject to cutbacks and layoffs which suggested an inference of "subterfuge" based on
27

28

1   age discrimination, the Ninth Circuit rejected Ritter's argument as meritless based on the

2   following rationale:

> In Nesbit v. Pepsico, Inc., 994 F.2d 703 (9th Cir. 1993), an
> employee claimed that his employer had violated the California
> Fair Employment and Housing Act by discriminating against
> him because of his age.  The plaintiff relied on the following
> evidence:
>
> (1) statistical evidence that some older workers were terminated
> while some younger workers were retained and that employees
> hired after the RIF were generally younger than those
> terminated; (2) a comment by [the employee's] direct superior to
> [the employee] that '[w]e don't necessarily like grey hair'; and
> (3) an interview of [the employer's] Senior Vice President of
> Personnel in which he stated, 'We don't want unpromotable
> fifty-year olds around.' [Id. at 705].
>
> Observing that California courts have adopted the analysis
> applicable to ADEA claims, we concluded that '[v]iewing the
> evidence cumulatively, and in a light most favorable to the
> appellants, it falls short of creating an inference of age
> discrimination.' Id., at 704-05.  Ritter presented less evidence
> than that offered by the unsuccessful plaintiff in Nesbit.  His
> employment history does not give rise to an inference of age
> discrimination.

15   Id., at 457.

16          As in Ritter and Nesbit,  Plaintiffs have not presented evidence that gives rise to an

17   inference of age discrimination. In this case, the chart/employee listing relied upon by

18   Plaintiffs contains the names, dates of birth, dates of hiring and dates of last check as to 44

19   of Defendants' employees.  The far right column on the chart contains the notation "laid off"

20   or "volun" for certain employees. The employees listed on the chart include the Plaintiffs and

21   the individuals Plaintiffs have identified in their summary judgment papers as hired between

22   January and April 2002, among others. The chart, however, does not contain any information

23   that specifies the positions filled or the duties performed by any of the individuals listed.  The

24   chart  shows that several employees (not Plaintiffs) were "laid off" in December 2001. Other

25   employees show "volun" beside their names between December 2001 and March 2002.  The

26   "new" employees Plaintiffs have identified in their papers were hired between January and

27   May 2002.  They therefore could have been replacement employees for persons who left

28   Defendants' employment between December 2001 and March 2002 other than Plaintiffs.  The

1    chart at most shows that during the dates identified on the chart, employees were hired,

2    employees remained with Defendants, and employees were laid off or left their employment.

3         Mr. Brandt's testimony that "some" of the new workers were possibly hired to perform

4    work that Plaintiffs had done does not show that the new workers were hired to replace any

5    specific Plaintiff. Plaintiffs' reference to Mr. Vigueria's testimony that "several of the

6    replacement workers had very little experience driving tractors" does not show that the newly

7    hired employees had qualifications equal to or less than Plaintiffs' qualifications.  Certainly,

8    the testimony does not show that any certain one of the new employees identified by

9    Plaintiffs had qualifications equal or inferior to any specific Plaintiff.

10        In addition, the undisputed evidence in this case shows that Owen Brandt, the

11   supervisor of Crew 94, made the lay off decisions concerning the Plaintiffs.  Mr. Brandt

12   testified that he did not look at any personnel files or speak to any of Defendants' managers

13   in making his decision as to any of the Plaintiffs.  There is no evidence that Mr. Brandt knew

14   the ages of any of the Plaintiffs or that age was a motivating factor in his decisions.  "[A]n

15   employer's intent to discriminate must be evaluated by reference to the decision-maker

16   actually ordering the adverse employment action, not to other persons in the company."

17   Woodman v. WWOR-TV, Inc., 411 F.3d 69, 89 (2d Cir. 2005).  Any reference to Mr.

18   Vigueria's alleged comment to Plaintiff Renteria that he was going to fire older workers

19   because he did not like them does not support Plaintiffs' efforts toward a prima facie case.

20   Mr. Vigueria was not the decision-maker.  Viewing the evidence in the light most favorable

21   to the Plaintiffs, the Court must conclude that Plaintiffs have failed to present a prima facie

22   case of age discrimination.

23        Even if the Court were to find that Plaintiffs have made out a prima facie case of age

24   discrimination, the burden then shifts to Defendants to articulate a legitimate, non-

25   discriminatory reason for the employment terminations.  In this case, Defendants have

26   presented evidence that their farming operations were cyclical.  Defendants also have

27   provided statistical evidence of greater crop efficiency and that fewer man hours were

28   expended by Crew 94 in early 2002 than in early 2001.  Based on this undisputed evidence,

1   it can be inferred seasonal layoffs for farm workers were appropriate in February 2002.  In

2   addition, Defendants have shown that Plaintiff Moreno was responsible for damage to a

3   tractor while working the night shift on February 5, 2002.  Defendants also have shown that

4   Plaintiff Renteria violated company policy by engaging in his check cashing business on

5   Defendants' property.  Plaintiffs Moreno and Renteria do not dispute these incidents.

6   Defendants therefore have satisfied their burden of demonstrating legitimate, non-

7   discriminatory reasons for the employment decisions.

8         The issue is whether at this stage on summary judgment proceedings Plaintiffs have

9   demonstrated the existence of evidence to create a genuine issue of material fact as to

10  whether the reasons proffered by Defendants for terminating their employment were a pretext

11  for discrimination.  Plaintiffs cite Mr. Vigueria's alleged comment to Plaintiff Renteria that

12  he was going to fire older workers because he did not like them.  No evidence suggests that

13  Mr. Vigueria was involved in the decision making process regarding the lay off

14  determinations. Moreover, "[s]tray remarks not acted upon or communicated to a decision

15  maker are insufficient to establish pretext." Mondero v. Salt River Project, 400 F.3d 1207,

16  1213 (9th Cir. 2005).  Plaintiff's reference to Mr. Daffern's testimony that he was fired

17  because he was "old" when considered in context shows that Mr. Daffern was offering his

18  own opinion and belief.  Mr. Daffern's "speculative" opinion is insufficient to raise genuine

19  issues of fact and defeat summary judgment. Thornhill Pub. Co. Inc., 594 F.2d at 738.

20        Plaintiffs' argument that Mr. Brandt failed to follow company policy does not show

21  pretext absent some evidence of a discriminatory connection.  See Risher v. Aldridge, 889

22  F.2d 592, 597 (5th Cir. 1989)(an agency's disregard of its own hiring system does not itself

23  conclusively establish that improper discrimination occurred or that a non-discriminatory

24  explanation for an action is pretextual).

25        Finally, Plaintiffs contend that Defendants have offered multiple, inconsistent reasons

26  for the employment decisions.  Plaintiffs point out that "fundamentally different justifications

27  for an employer's action would give rise to a genuine issue of fact with respect to pretext

28  since the possibility that neither of the official reasons was the true reason," citing

1   <u>Washington v. Garrett</u>, 10 F.3d 1421, 1434 (9th Cir. 1993).  However, Defendants' reasons

2   generally were based on work slow down or cause. These are two different but not

3   inconsistent reasons.  Different justifications for an adverse employment action will not

4   defeat summary judgment if those reasons are "not incompatible."  <u>Nidds v. Schindler</u>

5   <u>Elevator Corp.</u>, 113 F.3d 912, 918 (9th Cir. 1996);  <u>Aragon v. Republic Silver State Disposal</u>

6   <u>Inc.</u>, 292 F.3d 654, 661 (9th Cir. 2002)(pretext will not be inferred where employer had two

7   different, although consistent reasons, for laying off an employee; here, those reasons were

8   seasonal downturn in trash volume and employee's poor job performance and thus did not

9   support inference of pretext).[2]

10       Summary judgment is appropriate where the moving party has demonstrated that there

11   exists no genuine issue of material fact and the party is entitled to judgment as a matter of

12   law. Defendants have made such a showing on summary judgment.  Defendants' motion for

13   summary judgment as to Plaintiffs' ADEA and AWPA claims is granted.

14       **Accordingly**,

15       **IT IS ORDERED** that Defendants' motion to strike (Doc. 91) is granted in part and

16   denied in part as set forth in this Order.

17       **IT IS FURTHER ORDERED** that Defendants' motion for summary judgment (Doc.

18   71) as to all claims asserted by Plaintiffs is granted.

19       **IT IS FURTHER ORDERED** that the motion to continue settlement conference

20   (Doc. 51) is denied as moot.

21   ////

22   ////

23   ////

24   ////

25

26

27       [2]Even if the Court considers the EEOC investigator's notes (Plaintiffs' Exhibit P), the

28   reasons offered by Mr. Redman for the employment actions do not show pretext.

1      **IT IS FURTHER ORDERED** that Judgment shall be entered consistent with this

2   Order.

3      DATED this 27th day of March, 2006.

4

5

6   _____

7                    Mary H. Murguia
                United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28